UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-23909-CIV-ALTONAGA/Reid

**GREENWICH INSURANCE COMPANY**,

    Plaintiff,
v.

**HUMBERTO FERNANDEZ**, *et al*.,

    Defendants.
_____/

## ORDER

**THIS CAUSE** came before the Court on Defendant/Counter-Plaintiff, the court-appointed Receiver for Defendant, Mirador Master Association, Inc.'s ("Mirador Master['s]") *Daubert* Motion . . . ("Receiver's Mot.") [ECF No. 122]; and Plaintiff, Greenwich Insurance Company's [*Daubert*] Motion . . . ("Pl.'s Mot.") [ECF No. 127]. The Receiver and Plaintiff filed their respective Responses [ECF Nos. 137, 140], followed by Replies [ECF Nos. 147, 150]. The Court has reviewed the parties' submissions, the record, and applicable law. For the following reasons, each Motion is granted in part and denied in part.

### I. BACKGROUND

***Procedural Background.*** This case arises from an insurance dispute. The Court recites only those facts relevant to resolving the present Motions.

Plaintiff is a Delaware-based insurance carrier that issued two excess coverage insurance policies to Mirador Master Association, Inc. ("Mirador Master"), a Miami Beach-based condominium association. (*See* Am. Compl. [ECF No. 5] ¶¶ 2, 13–14). The first excess policy

was in effect between July 17, 2020, and January 4, 2021 (*see id.* ¶ 13), and the second covered the period from February 2, 2021, to July 17, 2021 (*see id.* ¶ 14).

In November 2020, four months after the first excess policy took effect, a construction company sued Mirador Master in Florida state court, later amending its complaint to add Mirador Master's sub-associations, Mirador 1000 Condominium Association, Inc. and Mirador 1200 Condominium Association, Inc. ("Mirador 1000 and 1200") as defendants. (*See id.* ¶¶ 16, 25; *see also generally id.*, Ex. G, NCP Am. Compl. [ECF No. 5-7]). In July 2021, Mirador 1000 and 1200 filed crossclaims and a third-party complaint against Mirador Master and four of its officers and directors — Bernardo Sandoval, Humberto Fernandez, Seth Frohlich, and Claudia Herman (collectively, the "D&Os") — alleging the D&Os mismanaged and misappropriated funds and breached fiduciary duties owed to Mirador 1000 and 1200. (*See generally* Intervenor-Pls.' Compl. [ECF No. 67], Exs. C–D, NCP Lawsuit Crossclaims and Third-Party Compls. [ECF Nos. 67-3–4]). Mirador 1000 and 1200 also moved for appointment of a receiver for Mirador Master; and the state court granted the motion, appointing the Receiver in February 2023. (*See generally* Notice of Filing [ECF No. 128], Ex. 10, Am. Order Appointing Receiver [ECF No. 128-10]).

After receiving notice of the state-court litigation in July 2023 (*see* Am. Compl. ¶¶ 24, 36, 62, 89), Plaintiff denied coverage for Mirador Master, the D&Os, and Mirador 1000 and 1200 (*see generally id.*, Ex. M, Apr. 1, 2024 Letter [ECF No. 5-13] 1 (letter from Plaintiff to the Receiver denying coverage)).[1] Thereafter, the Receiver, the D&Os, and Mirador 1000 and 1200 executed a *Coblentz* agreement (the "Assignment Agreement" or "Agreement") alongside several related settlement agreements. (*See* Intervenor-Pls.' Compl. ¶ 69; *see also generally* Receiver's Ans. and Counterclaim [ECF No. 37], Ex. 1, Assignment Agreement [ECF No. 37-1]). In the Assignment

---

[1] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

2

Agreement, the parties to the state-court action agreed not to seek recovery from each other and to assign their rights to assert claims against Plaintiff. (*See* Intervenor-Pls.' Compl. ¶¶ 69–71).

Plaintiff filed this suit in October 2024 against Mirador Master, the Receiver, Fernandez, Sandoval, Frohlich, and Herman, seeking declarations that it has no duty to defend or indemnify Defendants. (*See generally* Compl. [ECF No. 1]; *see also generally* Am. Compl.). The Receiver filed its Answer and Counterclaim, raising several affirmative defenses and counterclaims. (*See generally* Ans. and Counterclaim).[2]

Mirador 1000 and 1200, as assignees of Mirador Master, filed their Intervenor-Plaintiffs' Complaint on March 18, 2025, asserting a breach-of-contract claim against Plaintiff and seeking declaratory relief, including that Mirador Master was entitled to execute the Assignment Agreement because Plaintiff refused to defend Mirador Master in the state-court lawsuit. (*See* Intervenor-Pls.' Compl. 25; *see also generally id.*).[3] Plaintiff filed an Answer to the Counterclaim [ECF No. 46] and an Answer to the Intervenor-Plaintiffs' Complaint [ECF No. 72], raising affirmative defenses. (*See generally* Ans. to Counterclaim; Ans. to Intervenor-Pls.' Compl.).

In October 2025, Plaintiff filed a Motion for Summary Judgment [ECF No. 130] on all counts of its Amended Complaint, the Receiver's Counterclaim, and the Intervenor-Plaintiffs' Complaint. (*See generally* Pl.'s Mot. for Summ. J.). Plaintiff argued that (1) neither excess policy was triggered; and (2) the Assignment Agreement is unenforceable because the underlying insurance policy was not exhausted until after the agreement was executed, meaning Plaintiff's duty to defend was not triggered and could not have been breached, as required for a *Coblentz*

---

[2] Fernandez filed an Answer [ECF No. 38] joining in the "answer and affirmative defenses" of the Receiver (*See* Fernandez's Ans. 1). Sandoval also filed an Answer [ECF No. 43], raising affirmative defenses. (*See* Sandoval's Ans. 14).

[3] The Receiver likewise sought a declaration in the Answer and Counterclaim that the D&Os were entitled to execute the Assignment Agreement. (*See* Ans. and Counterclaim 38).

3

agreement to be enforceable. (*See* Pl.'s Mot. for Summ. J. 11–20). Subsequently, the Receiver and Mirador 1000 and 1200 filed a Motion for Partial Summary Judgment [ECF No. 134] requesting, in part, that the Court find Plaintiff wrongfully refused to provide a defense in the state-court suit, and that Plaintiff owes coverage for the claims asserted in that lawsuit. (*See generally* [Receiver and Mirador 1000 and 1200]'s Mot. for Partial Summ. J.).

On January 13, 2026, the Court entered an Order [ECF No. 175] granting in part and denying in part each of the summary-judgment motions. (*See generally* Jan. 13, 2026 Order). The Court found that factual disputes precluded summary judgment as to whether Plaintiff's policies were triggered. (*See id.* 17–22). The Court also concluded that the Assignment Agreement is unenforceable against Plaintiff because the underlying insurance policy was not exhausted until after the Assignment Agreement was executed. (*See* Jan. 13, 2026 Order 22–26).

***The Experts and Motions.*** The Receiver, Mirador 1000 and 1200, and Plaintiff retained experts who prepared reports addressing the enforceability of the Assignment Agreement, including its reasonableness; the scope of any coverage owed by Plaintiff; and whether Plaintiff received timely notice of the state-court litigation.

Receiver's proposed expert is Ronald L. Kammer, an attorney with experience in insurance coverage who would testify that the Assignment Agreement was reasonable and not tainted by fraud or bad faith. (*See generally* Pl.'s Resp. to [Receiver's *Daubert*] Mot. [ECF No. 140], Ex. 1, Expert R. of Ronald L. Kammer ("Kammer's R.") [ECF No. 140-1]). Mirador 1000 and 1200's proposed expert is R. Hugh Lumpkin, an attorney specializing in insurance who opines that Plaintiff received timely notice. (*See generally* Pl.'s Mot., Ex. 1, Expert R. of R. Hugh Lumpkin ("Lumpkin's R.") [ECF No. 127-1]). Plaintiff's proposed expert is Barry L. Davis, an attorney focusing on insurance law who rebuts Kammer's conclusion that the Agreement is reasonable and

4

Lumpkin's opinion that Plaintiff received timely notice. (*See generally* Receiver's Mot., Ex. 1, Rebuttal Expert R. [of Barry L. Davis] ("Davis's R.") [ECF No. 122-1]).

The Receiver challenges the admissibility of Davis's testimony, while Plaintiff challenges the admissibility of Lumpkin's testimony.[4] (*See generally* Receiver's Mot.; Pl.'s Mot.). The Receiver argues that Davis offers impermissible legal conclusions regarding insurance-policy interpretation and relies on a flawed methodology in assessing the reasonableness of the Assignment Agreement. (*See* Receiver's Mot. 6–10). Plaintiff asserts that Lumpkin offers improper legal conclusions concerning timely notice under the excess policies and the reasonableness of the Assignment Agreement (*see* Pl.'s Mot. 3–4), and Lumpkin's reliance on industry standards is irrelevant and unhelpful to the factfinder (*see id.* 5).

## II. LEGAL STANDARD

The Federal Rules of Evidence govern the admissibility and proper scope of expert testimony. Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if . . . :
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts[.]

Fed. R. Evid. 702 (alterations added).

An expert may rely on "facts or data in the case that the expert has been made aware of or personally observed" — even if otherwise inadmissible — "[i]f experts in the particular field

---

[4] Kammer's anticipated testimony is not at issue. (*See generally* Dkt.).

would reasonably rely on those kinds of facts or data[.]" *Id.* R. 703 (alterations added). In addition, an expert's opinion may "embrace[] an ultimate issue" of fact, but it may not offer legal conclusions. *Id.* R. 704 (alteration added); *see also Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) ("An expert may not, however, merely tell the jury what result to reach." (citation omitted)).

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court explained that Rule 702 requires district courts to ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. 579, 597 (1993). Courts must perform this "'gatekeeping'" function no matter how scientific, technical, or specialized the evidence. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (quoting *Daubert*, 509 U.S. at 589 n.7, 597; citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999)). "This function inherently requires the trial court to conduct an exacting analysis of the foundations of expert opinions to ensure they meet the standards for admissibility under Rule 702." *Id.* (emphasis, alteration, quotation marks, and citation omitted).

### III. DISCUSSION

The Court begins by addressing the Receiver's Motion and then considers Plaintiff's Motion.

**The Receiver's Motion.** The Receiver argues that Davis should be precluded from testifying because he offers legal conclusions regarding insurance coverage under the excess policies that are disguised as expert opinions. (*See* Receiver's Mot. 3, 6–8, 11). While an expert may provide an opinion on an ultimate issue of fact, testimony regarding "the legal implications of conduct" is impermissible; "the court must be the jury's only source of law." *Montgomery*, 898 F.2d at 1541 (citations omitted). To protect the Court's "exclusive prerogative" to "charg[e] the

6

jury regarding the applicable law[,]" the Court "must remain vigilant against the admission of legal conclusions[.]" *Commodores Entm't Corp. v. McClary*, 879 F.3d 1114, 1129 (11th Cir. 2018) (alterations added; quotation marks and citation omitted).

The Receiver is correct that Davis's proposed testimony includes legal conclusions. (*See generally* Davis's R.). Davis attempts to define the scope of coverage under the excess policies. (*See, e.g.*, *id.* 10 (asserting that no coverage exists under the excess policies for any funds misappropriated by Fernandez)). Yet "[t]he question of the extent of coverage under an insurance policy is a question of law to be decided by the court[.]" *Fireman's Fund Ins. Co. v. Tropical Shipping & Constr. Co., Ltd.*, 254 F.3d 987, 1003 (11th Cir. 2001) (alterations added; citations omitted); *see also EmbroidMe.com, Inc. v. Travelers Prop. Cas. Co. of Am.*, 845 F.3d 1099, 1105 (11th Cir. 2017) ("An insurance policy is a contract and therefore interpretation of the language in such a policy constitutes a ruling on a question of law[.]" (alteration added; citation omitted)).

Certainly, Davis's "legal analysis of the facts" is inadmissible. *Aroma360 LLC v. Scentiment, LLC*, No. 24-25031-Civ, 2025 WL 3484735, at *4 (S.D. Fla. Dec. 4, 2025) (quotation marks and citation omitted). The Receiver's Motion is therefore granted to the extent Plaintiff may seek to have Davis "state legal conclusions drawn by applying the law to the facts." *Motyl v. Franklin Templeton Co., LLC*, No. 13-60967-Civ, 2014 WL 1413434, at *3 n.3 (S.D. Fla. Apr. 11, 2014) (quotation marks and citation omitted); *see also Conway v. Celebrity Cruises Inc.*, No. 19-22470-Civ, 2021 WL 6274790, at *3 (S.D. Fla. Oct. 6, 2021) (citations omitted).

The Court does not address the Receiver's argument that Davis relies on a flawed methodology in assessing the reasonableness of the Assignment Agreement. (*See generally* Receiver's Mot.). Because expert testimony on reasonableness is directed only to the enforceability of the Agreement (*see generally* Davis's R.) — and enforceability has been resolved

(*see* Jan. 13, 2026 Order 22–26) — the Court does not reach the *Daubert* challenge to that testimony. The Receiver's Motion is thus denied as moot with respect to testimony regarding the Agreement's reasonableness.

**Plaintiff's Motion.** Plaintiff challenges Lumpkin's proposed testimony on two grounds. (*See generally* Pl.'s Mot.). First, Plaintiff objects to Lumpkin's opinions on what is required by the notice provisions of the excess policies and whether Plaintiff breached the policies by denying coverage, contending these opinions amount to impermissible legal conclusions based on interpretations of the insurance contracts. (*See id.* 3–4 (citing Lumpkin's R. 6–7)). Second, Plaintiff objects to Lumpkin's opinions on "industry standards" as unhelpful. (*See id.* 5).[5]

As Plaintiff notes, Lumpkin's proposed testimony includes legal analysis of the facts. (*See, e.g.*, Lumpkin's R. 7 (concluding that, in light of undisputed facts, "for any notice given to [Plaintiff] to be timely, the notice must relate back to a claim first made during its policy term" (alteration added))). As explained, such testimony is inadmissible, *see, e.g.*, *EmbroidMe.com, Inc.*, 845 F.3d at 1105 (citation omitted); *Aroma360 LLC*, 2025 WL 3484735, at *4 (citation omitted), and Plaintiff's Motion is granted to the extent the Receiver seeks to have Lumpkin opine on insurance-policy interpretation or the legal consequences of the parties' conduct.

Plaintiff's arguments regarding Lumpkin's "industry standards" opinions fail to persuade. (*See* Pl.'s Mot. 5). Plaintiff contends these opinions are "not helpful to the trier of fact, as this is an insurance coverage action, not a bad faith action." (*Id.*). "Expert testimony as to standard practices in an industry is admissible when it is relevant and the expert has demonstrated a basis for the opinion." *Go Mobile Flooring, LLC v. Blue Banyan Sols., Inc.*, 663 F. Supp. 3d 1294, 1314

---

[5] Plaintiff also argues that Lumpkin's opinions regarding the elements required to enforce a *Coblentz* agreement are impermissible legal conclusions. (Pl.'s Mot. 4). As with the Receiver's enforceability-related challenge, the Court denies that challenge as moot.

(M.D. Fla. 2023) (quotation marks omitted; quoting *Regions Bank v. Kaplan*, No. 12-cv-1837, 2017 WL 1148309, at *2 (M.D. Fla. Mar. 24, 2017)).

Here, Lumpkin offers "industry standards" opinions that are relevant. (*See* Lumpkin's R. 7). For example, Lumpkin asserts that the industry standard for when an excess insurer should receive notice is "as soon as practicable after it is believed by the policyholder that the claim involved may exceed the limits of the primary insurance policy[.]" (*Id.* (alteration added)). Such testimony could assist the trier of fact in deciding a genuine dispute of material fact: whether Plaintiff received timely notice of a claim as required by the excess policies. (*See* Jan. 13, 2026 Order 17–22); *see also Great Am. Ins. Co. v. Oracle Elevator Holdco, Inc.*, No. 22-cv-61997, 2025 WL 3541430, at *3 (S.D. Fla. Feb. 3, 2025) (permitting expert witnesses to opine about industry standards in an insurance coverage action (citations omitted)).

While Plaintiff insists Lumpkin's testimony is not relevant, Plaintiff neither provides authority stating that industry standards are irrelevant to breach-of-contract actions, nor explains why industry standards could not be relevant to the claims and defenses asserted in this case. (*See generally id.*); *see also Go Mobile Flooring, LLC.*, 663 F. Supp. 3d at 1315 ("Although there are some breach of contract cases to which industry standards are *not* relevant, . . . [Plaintiff] has not pointed to any authority . . . that industry standards are, as a matter of law, irrelevant to breach of contract cases." (alterations added; emphasis in original; citation omitted)). The Court therefore declines to prohibit Lumpkin from offering "industry standards" testimony regarding timely notice.

## IV.  CONCLUSION

Accordingly, it is

**ORDERED AND ADJUDGED** that Defendant/Counter-Plaintiff, the court-appointed

CASE NO. 24-23909-CIV-ALTONAGA/Reid

Receiver for Defendant, Mirador Master Association, Inc.'s *Daubert* Motion . . . **[ECF No. 122]** is **GRANTED in part and DENIED in part**. Plaintiff, Greenwich Insurance Company's [*Daubert*] Motion . . . **[ECF No. 127]** is **GRANTED in part and DENIED in part**.

**DONE AND ORDERED** in Miami, Florida, this 17th day of January, 2026.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:   counsel of record